## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BAUTISTA CAYMAN ASSET COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>P.D.C.M. ASSOCIATES S.E., REGENCY PARK ASSOCIATES, S.E., YABUCOA DEVELOPMENT S.E., ISRAEL KOPEL AMSTER AND THE COMMUNITY PROPERTY PARTNERSHIP CONSTITUTED BETWEEN HIM AND HIS LATE WIFE, JOSEFINA BALLESTER CABRERA, "BARGAIN CITY" at Plaza Aquarium Mall, "NATIONAL LUMBER AND HARDWARE" at Plaza Aquarium Mall, "NATIONAL LUMBER AND HARDWARE" at Plaza Yabucoa, CORPORATION A, B, C, D, and E, JANE AND JOHN DOE.<br><br>Defendants. | Civil No. _____<br><br>Re:<br><br>COLLECTION OF MONIES and BREACH OF CONTRACT |

## COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW plaintiff Bautista Cayman Asset Company ("Bautista"), through the undersigned counsel, and submits this complaint (the "Complaint") and respectfully requests as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over the present civil action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and arises between citizens of different states and/or between citizens or subjects of a foreign state or nation. In particular, there is complete diversity of citizenship between Bautista (a Cayman

1

Islands corporation with principal place of business in Texas) and Defendants (as defined below, who are subjects of Puerto Rico).

2.      Venue in this Court is proper under 28 U.S.C. §1391(b) because the events and omissions giving rise to the Complaint occurred within the District of Puerto Rico and the real estate properties object of the instant Complaint are all located in Puerto Rico.

## II.      THE PARTIES

3.      On February 27, 2015, the Office of the Commissioner of Financial Institutions closed the operations of Doral Bank ("Doral") and named the Federal Deposit Insurance Corporation ("FDIC") as receiver. On March 27, 2015, Bautista executed an agreement with the FDIC through which it acquired certain assets of Doral, including, among others, the credit relationships between Doral, including certain assignment of leases relating to the above-named defendants.

4.      Bautista, the plaintiff, is an exempt, for-profit corporation, organized and existing pursuant to the laws of the Cayman Islands. Bautista's offices are registered in Maples Corporate Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. Bautista's principal place of business is located at 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

5.      Upon information and belief, PDCM Associates, S.E. ("PDCM") is a for-profit company organized and existing under the laws of the Commonwealth of Puerto Rico. Upon information and belief, PDCM's mailing address is PO Box 190839 San Juan, PR 00919-0839.

6.      Upon information and belief, Regency Park Associates, S.E. ("Regency") is a for-profit company organized and existing under the laws of the Commonwealth of Puerto Rico. Upon information and belief, Regency's mailing address is PO Box 190839 San Juan, PR 00919-0839.

7.      Upon information and belief, Yabucoa Development S.E. ("Yabucoa") is a for-profit company organized and existing under the laws of the Commonwealth of Puerto Rico. Upon information and belief, Yabucoa's mailing address is PO Box 190839 San Juan, PR 00919-0839.

8.      Upon information and belief, Israel Kopel Amster ("Mr. Kopel"), and the community property partnership constituted between Mr. Kopel and his late wife Josefina Ballester Cabrera (collectively, the "Guarantors"), which partnership has not yet been dissolved, are residents of Guaynabo, Puerto Rico, with mailing address at PO Box 190839 San Juan, PR 00919-0839 and PO Box 190858 San Juan, PR 00919-0858.

9.      Upon information and belief, "Bargain City" is a tenant at Plaza Aquarium Mall, Toa Alta, Puerto Rico. Upon information and belief, Bargain City's mailing address is P.O. Box 190858, San Juan, PR 00919-0858.

10.      Upon information and belief, "National Lumber" and is a tenant at, among other locations, Plaza Aquarium Mall, Toa Alta, and Plaza Yabucoa, Yabucoa, Puerto Rico. Upon information and belief, National Lumber's mailing address is P.O. Box 190858, San Juan, PR 00919-0858.

11.      Corporation A-E and Jane and John Doe are the fictious names ascribed to any entity not mentioned above and under the control of Mr. Kopel or any of the entities which may be doing business or operating as "Bargain City" and is a tenant at Plaza Aquarium Mall, or "National Lumber", which is a tenant at, among other locations, Plaza Aquarium Mall, Toa Alta, and Plaza Yabucoa, Yabucoa, Puerto Rico or any entity acting on behalf of these entities. To the extent additional information is obtained through discovery or otherwise, the present complaint will be amended.

### III.     FACTUAL BACKGROUND

#### A. The Credit Facilities

12.     On May 16, 2013, PDCM, Regency and Yabucoa (hereinafter, collectively, the "Borrowers") executed an *Amended and Restated Term Loan Agreement* (as may have been amended or supplemented, the "Loan Agreement") with Doral. Through the Loan, Doral provided the Borrowers with a credit facility, in the principal amount of $26,913,012.33. See, Loan Agreement, **Exhibit A**.

13.     Pursuant to the Loan Agreement, in the event of any default under the terms obligations or covenants under the Loan, the lender could terminate its obligation under the same and accelerate in full all of the Borrowers' obligations or indebtedness under the Financing Agreements and the Loan becomes immediately due, owing and payable. See, Id., at 37-40.

14.     The principal amount due under the Loan Agreement is further evidenced by two promissory notes.

15.     The failure to pay when due any principal of or interest when due or any other amount payable under the Loan Agreement, the promissory notes or any other loan document, constitutes and event of default. See, Id., at 37-38.

#### B. The Collateral

16.     To secure the obligations under the Loan Agreement, the Borrowers granted to Doral, now Bautista priority liens over two real properties; one located in Corozal and the other in Yabucoa, Puerto Rico (the "Real Properties"). See, Mortgage Note I and Mortgage I, **Exhibit B,** at pages 1 and 5, respectively;  Mortgage Note II and *Deed of Modification and Extension of Mortgage*, **Exhibit C,** at pages 1 and 2, respectively; title study for the Corozal Property, **Exhibit D**, at page 1; Mortgage Note III and Mortgage II, **Exhibit E,** at pages 1 and 3, respectively;

4

Mortgage Note IV and Mortgage III, **Exhibit F**, at pages 1 and 2, respectively; and title study for the Yabucoa property, **Exhibit G**, at 1.

17.     On May 16, 2013, the Borrowers and Doral executed a *Mortgage Note Pledge and Security Agreement* (hereinafter, the "Pledge Agreement") (see, **Exhibit H**, at pages 1 and 2), authenticated under affidavit number 2400 of Notary public Silvia Egurrola Alonso, whereas the following mortgage notes were pledged to secure the re-payment of the amounts owed under the Loan Agreement:

A.     Mortgage Note payable to Scotiabank Puerto Rico, or to its order, in the principal amount of $12,162,000.00, due on demand, authenticated under affidavit number 3649 of Notary Public María P. Lake ("Mortgage Note I") and duly endorsed in favor of Bautista. Mortgage Note I is secured by the Deed of Mortgage Number 1 ("Mortgage I") executed on January 22, 2002 before Notary Public María P. Lake, in the principal amount of $12,162,000.00. See, Mortgage Note I and Mortgage I, **Exhibit B,** at pages 1 and 5, respectively.

B.     Mortgage Note payable to the Doral, or to its order, in the principal amount of $5,438,000.00, due on demand, authenticated under affidavit number 21,548 of Notary Public Arline Bauza Figueroa ("Mortgage Note II"), duly endorsed in favor of Bautista and secured by the Mortgage I, as amended and increased by Deed of Modification and Extension of Mortgage to secure Additional Mortgage Note Number 18 executed on September 28, 2007 before Notary Public Arline Bauza Figueroa, in the principal amount of $5,438,000. This deed increases Deed of Mortgage I. See, Mortgage Note II and Deed of Modification and Extension of Mortgage, **Exhibit C,** at pages 1 and 2, respectively.

C.     Mortgage Note payable to Scotiabank Puerto Rico, or to its order, in the principal amount of $5,720,000.00, due on demand, authenticated under affidavit number 2871 of Notary Public Jorge Souss ("Mortgage Note III") and duly endorsed in favor of Bautista. Mortgage III is secured by the Deed of Mortgage Number 2 ("Mortgage II") executed on August 11, 2003 before Notary Public Jorge Souss, in the principal amount of $5,720,000.00.  See, Mortgage Note III and Mortgage II, **Exhibit E**, at pages 1 and 3, respectively.

D.     Mortgage Note payable to Doral, or to its order, in the principal amount of $4,680,000.00, due on demand, authenticated under affidavit number 21,547 of Notary Public Arline Bauza Figueroa ("Mortgage Note IV") and duly endorsed in favor of Bautista. Mortgage Note IV is secured by the Deed of Mortgage Number 17 ("Mortgage III") executed on September 28, 2007 before Notary Public Arline Bauza Figueroa, in the principal amount of $4,680,000. See, Mortgage Note IV and Mortgage III, **Exhibit F,** at pages 1 and 2**,** respectively.

Hereinafter, the Mortgage Notes I – IV, collectively, the "Mortgage Notes" and the Mortgages I – III and Deed of Modification and Extension of Mortgage, collectively the "Mortgages".

18.     Through the Mortgages, the Borrowers constituted a lien in favor of Doral, now Bautista over, among others:

(f) all rights, title and interest of the Mortgagor (but none of its obligations) as owner or landlord (whether named as such therein or by assignment or otherwise) to receive payments of money under all options, contracts of purchase, concessions, rentals and/or leases of all or part of the Property or space therein, now existing or hereafter made (the "Property Contracts") and any and all amendments, supplements, renewals and extensions thereof, including without limitation all revenues, profits and rents, payments incident to any assignment, sublease or surrender of any Property Contract, claims for forfeited deposits or damages, now due or hereafter to become due with respect to any Property Contract, all of which amounts and payments are hereby assigned as additional collateral security to the

6

Mortgagee. The mortgagor hereby irrevocably authorized the Mortgagee, upon a default in the obligations secured by this Mortgage, to make written demand and receive from any obligee under any Property Contract all amounts payable thereunder, and said obligee is irrevocably directed to make such payments to the Mortgagee upon such written demand. By so doing the obligee will have discharged its payment obligations under the Property Contract to the same extent and manner as if the payments had been made to the Mortgagor.

See, Mortgage I, **Exhibit B**, at page 8, and Mortgage II, **Exhibit E**, at page 7; see also, Mortgage III, **Exhibit F**, at pages 5-7 ("Mortgagor hereby constitutes and creates a voluntary mortgage […] on the following: […] (e) All rents, earnings, revenues, issues and profits of all of the foregoing, corresponding to the period commencing on the date of this Mortgage").

### C. Assignment of Rents

19.     On May 16, 2013, and to further secure the amounts due under the Loan Agreement, PDCM and Doral executed an *Agreement of Assignment of Lessor's Interest in Leases* (the "Assignment Agreement I"), authenticated by affidavit number 2401 of Notary Public Silvia Egurrola Alonso pursuant to which PDCM assigned to Doral, now Bautista, among other things, the rents from the lease agreements related to Plaza Aquarium Mall (the "Plaza Aquarium Leases") at Toa Alta, Puerto Rico (the "Plaza Aquarium Rents").  See, Assignment Agreement I, **Exhibit I**, at pages 2 and 16.

20.     On May 16, 2013, Yabucoa and Doral executed an *Agreement of Assignment of Lessor's Interest in Leases* (the "Assignment Agreement II", collectively with the Assignment Agreement I, the "Assignment Agreements"), authenticated by affidavit number 2402 of Notary Public Silvia Egurrola Alonso pursuant to which Yabucoa assigned to Doral, now Bautista, among other things, all the rents from the lease agreements related to Plaza Yabucoa Shopping Center (the "Plaza Yabucoa Leases" and collectively with the Plaza Aquarium Leases, the "Leases") at

Yabucoa, Puerto Rico (the "Plaza Yabucoa Rents" collectively with the Plaza Aquarium Rents, the "Rents"). See, Assignment Agreement II, **Exhibit J**, at pages 2 and 13.

21.     Under the Loan Agreement, the Borrowers also granted Doral, now Bautista, a security interest in the depository account designated for the monthly deposit of the Rents. See, Loan Agreement, **Exhibit A**, at page 39.

22.     As part of the Assignment Agreements, PDCM and Yabucoa represented to Doral that the Rents are "not subject to any defense, offset, deduction or counterclaim", and agreed to:

> [K]eep and maintain at [their] own cost and expense satisfactory and complete records of its accounts and Contracts, including, but not limited to, the originals of all documentation (including each Contract) with respect thereto, records of all payments received, all credits granted thereon, all merchandise returned and all other dealings therewith, and the Assignor will make the same available to the Assignee for inspection, at the Assignor's own cost and expenses, at any and all reasonable times upon demand. If the Assignee so directs, the Assignor shall legend, in form and manner reasonably satisfactory to the Assignee, the Contracts, as well as books, records and documents of the Assignor evidencing or pertaining to the Contracts with an appropriate reference to the fact that the Contracts have been assigned to the Assignee and that the Assignee has a security interest therein."

See, **Exhibits I and J** at § 5.3(a)(2); see also, id. at § 5.3(a)(8).

23.     Notwithstanding PDCM and Yabucoa's obligation to maintain and make available to the Lender all records related to the Rents, including the Leases, PDCM and Yabucoa have refused to make those records available to Bautista, as shown by email exchanges between Bautista's servicer and PDCM and Yabucoa. See, **Exhibit K**.

24.     Upon the issuance of a notice of default and foreclosure of rents, the Assignment Agreements allow Bautista to "take possession of and indorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under [the Leases]" and to file "any claim or to take any other action or proceeding in any court of law or equity as otherwise deemed appropriate by the Assignee for the purpose of collecting any and all such moneys due". See, **Exhibits I and J** at § 5.9(a).

25.     The Assignment Agreements also provide that PDCM and Yabucoa shall "save, indemnify and keep the [Lender] harmless" from, among others, any expenses, including attorney's fees, incurred by the Lender in connection with the collection of the Rents, as well as a result of any breach by PDCM and Yabucoa of their obligations, under the Leases or otherwise, or any other defense or counterclaim which may be raised against the collection of the Rents. See, Id. at §§ 5.3(a)(4) and 5.3(a)(7).

26.     According to the rent rolls included in the Assignment Agreements, the commercial space occupied by National Lumber at Plaza Aquarium accrued, at the time of signing, a monthly rent of **$15,147.00**. In addition, the commercial space occupied by Almacenes Pitusa (now Bargain City) at Plaza Aquarium accrued, at the time of signing, a monthly rent of **$22,356.00**. Lastly, the commercial space occupied by National Lumber at Yabucoa Plaza accrued, at the time of signing, a monthly rent of $**12,440.18**. See, Assignment Agreement I, **Exhibit I**, at page 18, and Assignment Agreement II, **Exhibit J**, at page 15.

**D. Guarantees**

27.     On May 16, 2013, the Guarantors executed a *Guaranty and Agreement* ("Guaranty Agreement ") authenticated under affidavit number 2403 of Notary Public Silvia Egurrola Alonso to jointly and severally guarantee to the Lender the payment of all of the obligations under the Loan. See, Guaranty Agreement, **Exhibit L, at page 2**. On July 29, 2004, the Guarantors executed a *Continuing and Unlimited Guaranty* ("Guaranty II" and with Guaranty I, the "Guarantees") authenticated under affidavit number 22,696 of Notary Public Manuel L. Correa Marquez.

28.     The Mortgage Notes, Mortgages, Assignments Agreement I, Assignment Agreement II, the Pledge Agreement, and the Guarantees are collectively referred to as the

"Collateral Documents". The Real Properties, and the Rents, are collectively referred to herein as the "Collateral".

### F. Default and filing of complaint

29.     The Borrowers defaulted on their obligations under the Loan Agreement as they failed to pay the amounts due under the terms thereof.

30.     Accordingly, on July 13, 2018, Bautista sent a letter to the Borrowers and the Guarantors detailing the events of default under the Loan which included their failure to pay and satisfy the amounts due under the same on or before the maturity date ("Notice of Default"). See, Notice of Default, **Exhibit M**.  As a result, Bautista declared all of the obligations under the Loan as immediately due, owing and payable. Id.

31.     As of that date, the Borrowers and the Guarantors owed the total amount of $26,910,494.19, composed of $24,252,031.41 of principal, $2,603,289.39 of interests and $55,173.39 of late charges, as provided in the Loan and the Collateral Documents, plus the amount of $4,042.01 *per diem* for interest and any additional amount incurred in costs and fees under the Financing Agreement for each day through the date of the indefeasible payment in full of all amounts due under the Loan.

32.     Given the Borrowers and Guarantors' failure to cure the existing and continuing defaults detailed above, which continues to this day, Bautista filed a complaint seeking the collection of monies and the foreclosure of collateral. See, Bautista Cayman Asset Co. v. P.D.C.M. Assoc., S.E., et al., Civil No. 18-1716 (D.P.R. filed Sept. 24, 2018).

### G. Notices of Foreclosure and Collection of Rents

33.     On August 14, 2019, (the "Foreclosure Date"), Bautista sent a *Notice of Foreclosure and Collection of Rents* (the "First Notice") via certified mail to all lessees under the

Leases, including Bargain City and National Lumber (the "Tenants"), which was received that same day. See, First Notice, **Exhibit N**.

34.     In the First Notice, Bautista informed all lessees, including the Tenants, that Bautista was the successor to Doral to certain indebtedness by the Borrower secured by the Assignment Agreements.

35.     The First Notice further notified the Tenants that, pursuant to the Assignment Agreements, the Borrower had assigned any and all amounts, including, but not limited to, the Rents and any other sums payable under the Leases.

36.     The First Notice also informed the Tenants that Borrowers had defaulted in their payment obligations to Bautista, and that notice of said default had been provided on July 13, 2018.

37.     Accordingly, as of the date of the Foreclosure Date and in accordance with the Assignment Agreements, Bautista demanded that the Tenants deliver to Bautista any and all payments, sums, advances, credits or distributions that the Tenants owed to the Borrower relating to the Leases, including, but not limited to past due balances and/or future payments (the "Rent Payments").

38.     On January 10, 2020, a *Second Notice of Foreclosure and Collection of Rents* ("Second Notice") was sent to all lessees, including the Tenants, via certified mail. See, Second Notice, **Exhibit O**.

39.     In the Second Notice, Bautista reiterated its demand that the Tenants deliver the Rent Payments to Bautista.

40.     Although the Borrowers have breached and refused to comply with their obligations under the Assignment Agreements to provide Bautista with a copy of each of the Leases, based on information and belief, the commercial space occupied by National Lumber at Plaza Aquarium

currently accrues a monthly rent of **$16,661.70**, the commercial space occupied by Bargain City at Plaza Aquarium currently accrues a monthly rent of **$12,317.50**, and the commercial space occupied by National Lumber at Yabucoa Plaza currently accrues a monthly rent of $**10,052.67**. See, Assignment Agreement I, Rent Roll, at 18-19, and Assignment Agreement II, Rent Roll, at 15.

41.     The Tenants have not made any Rent Payments to Bautista since the Foreclosure Date.

42.      As a result, as of November 30, 2020, under the Leases and the Assignment Agreements, the Tenants owe Bautista over **$585,478.05** in past-due rents which have accrued - **and continue to accrue**- for the 15 months since the Foreclosure Date. This amount includes **$249,925.50** for 15 months of rent for the commercial space occupied by National Lumber at Plaza Aquarium, **$184,762.50** for 15 months of rent for the commercial space occupied by Bargain City at Plaza Aquarium, and **$150,790.05** for 15 months of rent for the commercial space occupied by National Lumber at Yabucoa Plaza.

## IV.     FIRST CAUSE OF ACTION: COLLECTION OF MONEY

43.      Bautista incorporates by reference each and every allegation set forth in paragraphs 1 to 42 as if set forth in full below.

44.      The Tenants have failed to comply with their obligations by, among other things, failing to make the Rent Payments to Bautista as they have become due. The Borrowers and Guarantors have also failed to deliver said Rent Payments, to the extent they have received the same, to Bautista.

45.      Bautista is owed over **$572,467.243** in Rent Payments which have accrued – and continue to accrue- since the Foreclosure Date (the "Accrued Rent Payments").

46.     The Accrued Rent Payments have not been paid in spite of Bautista's collection efforts. Bautista requests that this Honorable Court order (i) the immediate payment of the Accrued Rent Payments and (ii) the payment of any future Rent Payments under the Leases to Bautista.

## V.     SECOND CAUSE OF ACTION: BREACH OF CONTRACT AGAINST PDCM AND YABUCOA

47.     Bautista incorporates by reference each and every allegation set forth in paragraphs 1 to 46 as if set forth in full below.

48.     PDCM and Yabucoa did not provide copies of the Leases and related records to Bautista, thus failing to comply with their obligations to Bautista under the Assignment Agreements.

49.     PDCM and Yabucoa failed to cause the Rents to be collected when due in accordance with the Leases and as required by the Assignment Agreements.

50.     Borrower has not indemnified Bautista for, among others, the costs and expenses, including legal fees, it has incurred in the collection of the Rents, or for the losses suffered in connection therewith, as required by the Assignment Agreements.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter judgment granting Bautista Cayman Asset Company's Complaint and: (i) ordering each of the defendants to pay to Bautista the total amount of the Accrued Rent Payments; (ii) ordering PDCM and Yabucoa to indemnify Bautista for the losses suffered as a result of PDCM and Yabucoa's breach of contract,  and (iii) ordering the Tenants to make any future Rent Payments directly to Bautista.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 1st[th] day of December, 2020.

     **We HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

M | P | M **MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 900
San Juan PR 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*S/Luis C. Marini Biaggi*
Luis C. Marini Biaggi
USDC-PR No. 222301
lmarini@mpmlawpr.com

*S/Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC-PR No. 300913
cvelaz@mpmlawpr.com

*S/Hans E. Riefkohl Hernández*
Hans E. Riefkohl Hernández
USDC-PR No. 306311
hriefkohl@mpmlawpr.com